## James Weston

*v.*

## Mary Wilson and others.

Relief prayed by a bill to rectify a deed, whereby, through the mutual mistake of the parties, a lot of land was conveyed instead of an adjoining one, can only be granted by transferring to such adjoining lot the encumbrances put on the former by the parties.

---

Bill for relief. On final hearing on pleadings and proofs.

*Mr. T. D. Hoxsey*, for complainant.

*Mr. J. H. Rogers*, for defendant.

Weston *v*. Wilson.

THE CHANCELLOR.

This litigation arises out of the sale by the defendant's testator, Thomas Wilson, to the complainant, in the spring of 1875, of a tax title under the charter of the city of Paterson, for ninety-nine years, for a lot of land in Paterson, designated in the deed from the city to Wilson as number 158 Atlantic street. The bill alleges that Wilson fraudulently represented to the complainant that a lot adjoining lot number 158, and numbered 160, was that lot, and that the latter, confiding in the representation, entered upon number 160 and built a dwelling-house there; that, after the complainant had begun the building, he was informed by one Michael McDermott that he was the true owner of the property; that the complainant then taxed Wilson with the fraud which he had practiced on him, and that the latter admitted it, and promised to obtain the title to the land from the owner; that he did so, but, without the complainant's knowledge, took the title to the property in his own name; that the complainant then, supposing the title to the land was in himself, gave to Wilson a mortgage, as he supposed, on the McDermott property, for over $800, in which were included $500 paid by Wilson to McDermott for the property, but he has since learned that Wilson (as the complainant alleges, in furtherance of his fraudulent design) caused the mortgage to be drawn and executed on lot number 158; that the complainant left this country in 1876, and on leaving put the property in charge of one of his friends, but Wilson subsequently forcibly took possession of it, and ever since has retained possession. The bill prays that Wilson may be decreed to hold the property as trustee of the complainant until he shall have accounted to the latter for the moneys expended by him on it, or shall have granted the land to the complainant on such terms as may seem equitable. There is no prayer for general relief.

Wilson, who died after filing the answer, answered the bill according to requirement, on oath, denying the fraud, and alleging that the location of the lot under the tax deed

Weston *v.* Wilson.

was a mere mistake, which he only discovered after the complainant had begun building; that he, as soon as he was satisfied of it, set about buying the property, under an agreement between him and the complainant that, if he would buy the property and convey it to the complainant, the latter would pay him, or secure to him by mortgage, $200 as additional purchase-money for it (the complainant paid $300 when he got the deed for the tax title); that he accordingly bought the property and would have conveyed it to the complainant, but the latter not only would not pay or secure the $200 to him, but abandoned the property and left the country not to return again. He further answers that the mortgage mentioned in the bill was not given for the price of the land bought from Mr. McDermott, or any part of it, but for money ($840) which, on the giving of the deed for the tax title, he agreed with the complainant to lend him, and which he advanced to him accordingly, to enable him to build the house, and that the mortgage was given at the same time as the deed for the tax title.

The proof in the cause fails to show any actual fraud on the part of Wilson, or any fraudulent design. He appears to have believed and to have persisted in believing, perhaps against enlightened advice and assurance to the contrary, that the McDermott lot, though it was not number 158 but number 160, was indeed the lot which he had bought at the tax sale, and he seems not only to have been determined to defend the claim which he asserted to it under the tax title, but to have acted accordingly. In agreeing to advance, and actually advancing, $840 to enable the complainant to build the house on the lot, solely on security of mortgage on the tax title, he gave the best assurance of his confidence in the claim which he so asserted. When, after an action of ejectment had been brought by McDermott against the complainant to recover possession of the property, he became satisfied that the land could not be held under the tax title, he, in order to protect the complainant, bought the property from McDermott, and would have conveyed it to the

complainant by deed with warranty, on receiving from him $200 or security by mortgage on the property therefor. That sum, with what the complainant had already paid for the tax title ($300), would be $85 less than the price which Wilson paid McDermott for the property. The evidence shows that the complainant verbally agreed to that proposition, but did not pay the money or give the mortgage for it, and therefore did not get a conveyance of the fee of the property from Wilson. It also shows that in the spring of 1877, the complainant sold the machinery with which he carried on his business and left the country not to return, and entirely abandoned the property. This suit, though prosecuted in his name, is really prosecuted for the benefit of two of his creditors (under a letter of attorney from him to one of them) to the extent of their debts and interest, and the costs and expenses of suit.

On behalf of the complainant it is urged that, under the circumstances, equity requires that he receive the benefit of the conveyance from McDermott to Wilson, and that the mortgage to Wilson be treated as a mortgage, not on the property conveyed by that deed, but on the property (number 158) mentioned in the tax title deed; that is, that the complainant be decreed to enjoy the McDermott property clear of any claim on the part of Wilson's estate thereon. But he that would have equity must do equity. All that the complainant can ask is that he be placed in as good a position as he would have been in had he received a valid tax title for ninety-nine years to the McDermott property. Therefore, while he should have the benefit of an equitable estoppel as against the estate of Wilson to the extent of the term mentioned in the tax title deed, it should only be on such equitable terms as at the same time to give effect to the Wilson mortgage as a mortgage thereon. There is no evidence of any refusal by Wilson to do whatever might be necessary or desirable to confirm the title of the complainant to the McDermott property for the term mentioned in the tax title deed. Shortly before Weston left the country he

went to Wilson's house and had an interview with him on the subject of his title. Wilson then assured him that it was good for ninety-nine years. When Harwood, the creditor before mentioned to whom the letter of attorney was given, and who was present at that interview, subsequently and after Weston's departure from this country, called on Wilson on the subject and demanded the mortgage, in order that he might get it cancelled of record, Wilson, of course, refused to comply with the demand. It does not appear that any demand or request was ever made to him to convey to Weston a term in the property equal to the term mentioned in the tax title deed. In equity the defendant should convey such title, but at the same time the title so conveyed should be declared to be subject to the Wilson mortgage. Under the circumstances no costs will be awarded to either side.